UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARIA DE LA O, et al.,

                Plaintiffs,

        v.

ROBIN ARNOLD-WILLIAMS, et al.,

                Defendants.

NO. CV-04-0192-EFS

**ORDER ENTERING RULINGS
FROM NOVEMBER 2, 2006,
HEARING**

MARIA FERNANDEZ, et al.,

                Plaintiffs,

        v.

DEPARTMENT OF SOCIAL AND HEALTH
SERVICES, et al.,

                Defendants.

[NO. CV-05-0280-EFS]

    A Pretrial Conference was held in the above-captioned matter on
November 2, 2006.  Counsel appeared on behalf of the parties, as
reflected in the hearing Minutes (Ct. Rec. 491).  Before the Court were
several motions: (1) Plaintiffs' Motion for Partial Summary Judgment
Declaring RCW 74.15.030, 74.15.050(2), 74.15.060(1), 74.15.080 and WAC
388-296-0450, 388-296-0520 Unconstitutional (Ct. Rec. 116); (2) State
Defendants' Cross Motion for Partial Summary Judgment (Ct. Rec. 126); (3)

ORDER ~ 1

Plaintiffs' Motion for Preliminary Injunction of RCW 74.15.030(7), 74.15.050(2), 74.15.060(1), 74.15.080 and WAC 388-296-0250(1), 388-295-0450(2), 388-296-0520(8) (Ct. Rec. 198); (4) State Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Requests for Permanent Injunctive Relief (Ct. Rec. 254); (5) Plaintiffs' Motion for Voluntary Dismissal of Three Injunctive Relief Claims (Ct. Rec. 403), and (6) State Defendants' Second Motion for Summary Judgment (Ct. Rec. 249). After reviewing the submitted materials and relevant legal authority and hearing oral argument, the Court is fully informed; this Order serves to supplement and memorialize the Court's oral rulings and to enter decisions on issues that were taken under advisement.

## I.  FACTUAL BACKGROUND[1]

---

[1]    In ruling on the motions for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation, which contains the barest skeletal facts, was created utilizing this standard. Many more facts will be added in conjunction with the analysis of particular issues, thereby adding to this brief factual background. A recitation here of all of the pertinent facts would make little sense without the context provided by the subsequent analysis.

ORDER ~ 2

Washington State Department of Social and Health Services (DSHS) Division of Child Care and Early Learning (DCCEL)[2] administers the federally-funded Working Connections Child Care Program and Seasonal Child Care Program, which pays day care centers for child care services for eligible families.  On May 7 and 8, 2002, DSHS Division of Fraud Investigations (DFI) teamed with INS agents and visited forty-seven Mattawa family child care home[3] (hereinafter, "day care") providers with administrative subpoenas and entered these day cares to obtain immigration-related  documents and day care records; similar contacts were made earlier to three Mattawa day cares in September 2001.  During both the September 2001 and May 2002 contacts, the subpoena duces teca, which were written in English, required production of the books and records required to be kept by the providers.  (Ct. Rec. 129-1 Exs. A & B.)  The DFI/INS team informed the providers that they were there to obtain documents and either briefly showed them the subpoena duces tecum or simply advised the providers that they had such.[4]  The providers were

_____

[2]  On July 1, 2006, responsibility for the licensing and inspection of family child care homes was transferred to the Department of Early Learning (DEL).  RCW 43.215 *et seq.*

[3]  These day cares are operated within the providers' home.

[4]  Plaintiffs provided Declarations (Ct. Recs. 344-359, which were later supplemented for "translation" purposes by Ct. Recs. 449-469 & 471-75) describing the events that occurred during the "visit" from their perspective.  The general consensus is that the "investigators" did not fully identify themselves or explain the purpose of their visit.  The

ORDER ~ 3

asked questions about citizenship and immigration status and were required to provide documentation establishing immigration status of themselves, their husbands, their children, and/or their assistants. The DFI/INS team took this documentation with them, along with the original day care records that are required to be kept by statute and regulation. The original immigration/citizenship documents were returned to the providers within days to a couple weeks; however, copies, not originals, of the day care records were returned to the providers within days to a couple months. Many providers still contend they are missing some of the records that were taken; the DFI/INS teams did not take an inventory of the original records prior to taking them.

The current lawsuit is composed of two consolidated class actions brought by the day care providers against DSHS, DSHS employees, and city officials, alleging in pertinent part that the events on May 7 and 8, 2002, violated the providers' Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiffs also allege a number of Washington's child care statutes and regulations are unconstitutional due to their overbreadth. The instant motions before the Court primarily concern whether these Washington statutes and regulations are

---

investigators advised that they had a court order to obtain all requested documents and demanded first to seek and take immigration/citizenship related documents and then obtained the day care records. The investigators took the originals, generally sending copies of these documents within one to three weeks after the visit, but not returning the originals.

ORDER ~ 4

constitutional and whether Plaintiffs are entitled to declaratory and injunctive relief.

## II.  MOTIONS FOR SUMMARY JUDGMENT

### A.  Standard

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).  The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c).  In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Lynn v. Sheet Metal Worker's Intern. Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982)).  The court is to view the facts and draw inferences in the manner most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213.  "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San*

*Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

**B.  Plaintiffs' Motion for Partial Summary Judgment Declaring RCW 74.15.030, 74.15.050(2), 74.15.060(1), 74.15.080 and WAC 388-296-0450, 388-296-0520 Unconstitutional (Ct. Rec. 116) *AND* State Defendants' Cross Motion for Partial Summary Judgment (Ct. Rec. 126)**

Recognizing that the health, safety, and well-being of children who are receiving care away from their home is critical, the Washington Legislature enacted statutes governing the licensing and operation of child care facilities.  RCW 74.15.010(1).  Plaintiffs acknowledge this significant public interest but ask the Court to declare the following Washington child care statutes and regulations as facially violative of the Fourth Amendment due to their overbreadth as they authorize entries into homes of day care providers without restriction as to time, scope, place, or manner:  RCW 74.15.030, 74.15.050(2), 74.15.060(1), and 74.15.080 and WAC 388-296-0450 and 388-296-0520 (hereinafter "Washington child care regulatory scheme").[5]  If the Court so agrees, Plaintiffs ask

---

[5]  WAC 388-296-0450 and 388-296-0520 (2005) replaced WAC 388-155-080 and 388-155-090 (2001), respectively.  Then, in 2006, as a result of the transfer of responsibility from DSHS to DEL, WAC 388-296-0450 was replaced by WAC 170-296-0450, while WAC 388-296-0520 was replaced by WAC 170-296-0520.  The changes in the renumbering of the WACs have no impact as to their constitutionality.  The Court will utilize the WAC cites as used by the parties in their pleadings, i.e. WAC 388-296-0450 and 388-296-0520 (2005).

ORDER ~ 6

1    the Court to enjoin the State of Washington from conducting warrantless
2    inspections of child care homes.

3         In response and through their own motion, State Defendants ask for
4    an order granting partial summary judgment dismissing Plaintiffs' claims
5    that Washington's child care regulatory scheme violates the Fourth
6    Amendment, arguing the statutes and regulations are constitutional and
7    Plaintiffs do not have standing to bring many of these facial challenges.
8    In addition, State Defendants move for partial summary judgment on the
9    grounds that Plaintiffs did not have a reasonable expectation of privacy
10   in the business records inspected and, therefore, the inspection of the
11   records did not constitute a search and seizure under the Constitution.
12   In the alternative, State Defendants argue Plaintiffs consented to the
13   search and seizure conducted within their pervasively-regulated business.

14        Many of the issues are interrelated; accordingly, the Court has
15   selected the following framework to analyze and discuss these issues:
16   first, the Court addresses State Defendants' argument that a warrant was
17   not required by analyzing whether a search or seizure occurred and
18   whether Plaintiffs consented to such; then, the Court analyzes whether
19   an exception to the warrant requirement applies.  The Court addresses the
20   constitutionality of Washington's child care regulatory scheme in the
21   course of analyzing the pervasively-regulated business exception to the
22   warrant requirement.

23        1.   <u>Fourth Amendment</u>

24        The following protections provided by the Fourth Amendment are made
25   applicable to the states by the Fourteenth Amendment:

26        The right of the people to be secure in their persons, houses,
          papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue,
but upon probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the
persons or things to be seized.

U.S. Const. amend. IV; *Katz v. United States*, 389 U.S. 347, 357 (1967);
*Ker v. California*, 374 U.S. 23, 30 (1963).  Per its terms, the Fourth
Amendment generally requires a warrant to be obtained before a search or
seizure occurs.  This protection against unreasonable searches and
seizures extends to commercial premises, but is most highly protected in
the context of homes. *Donovan v. Dewey*, 452 U.S. at 598 (1981).

    2.   <u>Search</u>

    State Defendants argue they did not conduct a search by entering the
day care premises because the investigators came to the day cares during
usual business hours and were invited into the residence by the
providers.  A search occurs "when an expectation of privacy that society
is prepared to consider reasonable is infringed." *Soldal v. Cook County*,
506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109,
113 (1984)).  The Supreme Court has emphasized that "at the very core"
of the Fourth Amendment "stands the right of a man to retreat into his
own home." *Id.* at 61 (quoting *Silverman v. United States*, 365 U.S. 505,
511 (1961) (internal citations omitted)).  Accordingly, a search of a
private home without a warrant is presumptively unreasonable.  *Rush v.
Obledo*, 756 F.2d 713, 717 (9th Cir. 1985).

    The providers operated day cares in their homes; accordingly, it was
both a commercial venture and a private residence.  A reasonable provider
would be aware there were state regulations governing the operation and
condition of her home; nevertheless:

ORDER ~ 8

the mere fact that a business is carried on in the home for certain hours does not remove the home from Fourth Amendment protection.    The decisions of the Supreme Court firmly establish "that the Fourth Amendment's prohibition against unreasonable searches applies to administrative inspections of private commercial property."

*Rush*, 756 F.2d at 717 (quoting *Donovan v. Dewey*, 452 U.S. 594, 598 (1981)).

State Defendants rely upon the Supreme Court decision in *Wyman, Commissioner of New York Department of Social Services v. James*, 400 U.S. 309, 316 (1971), and the Ninth Circuit's recent decision in *Sanchez v. San Diego*, 464 F.3d 916 (9th Cir. 2006), to argue that the entries by the inspectors were not searches.    In *Sanchez*, the Ninth Circuit relied upon *Wyman*[6] to determine that a home visit for welfare verification purposes was not a search because the home visit only occurred if the applicant consents and there was no penalty for refusing consent - other than denial of benefits.    *Id.* at 920-23.    The Ninth Circuit then went on to find that even if the home visits are searches, such visits are reasonable.    *Id.* at 923-35.

Although at first glance *Wyman* and *Sanchez* appear to control, given that the usual penalty for refusing a day care inspection is revocation of a license, a non-criminal penalty, the Court finds the facts of this case are sufficiently different so that *Wyman* and *Sanchez* are not

---

[6]    In *Wyman*, a beneficiary of child welfare refused a home visit by a caseworker and thus her benefits were terminated pursuant to the New York statutory scheme.    The question before the Supreme Court was whether it was unconstitutional to terminate child welfare benefits based simply on the mother's refusal to permit the home inspection.

ORDER ~ 9

controlling.  First, in *Wyman*, the Supreme Court specifically highlighted that its "no search" decision was based on the fact that the caseworker never entered the home; rather, the individual seeking welfare benefits denied a home inspection outright.  400 U.S. at 317-18.  Second, the Supreme Court in *Wyman* stated there was no allegation of "[f]orcible entry or entry under false pretenses or visitation outside working hours or snooping in the home . . .," *id.* at 321, and the home visit did "not deal with crime or with the actual or suspected perpetrators of crime.  The caseworker is not a sleuth but rather, we trust, is a friend to one in need." *Id.* at 323.  Further, the Court specifically noted:

> Our holding today does not mean, of course, that a termination of benefits upon refusal of a home visit is to be upheld against constitutional challenge under all conceivable circumstances.  The early morning mass raid upon homes of welfare recipients is not unknown.  But that is not this case.  Facts of that kind present another case for another day.

*Id.* at 326.  The facts in *Sanchez* were similar to those in *Wyman*.

Here, the inspectors did enter the homes.  Further, when the evidence is viewed in Plaintiffs' favor, there is evidence that entry was gained by advising the Plaintiffs that the inspectors had a court order to enter the home and seize documents, which could be viewed as false pretenses.  In addition, caseworkers were not part of the visit, but rather the individuals conducting the visits were from DFI and INS, who were not "friends" but rather "sleuths" under these circumstances.  Accordingly, the Court finds, based on the facts as presented by Plaintiffs, that *Wyman* and *Sanchez* do not apply.  The providers had a reasonable expectation of privacy in their residence, notwithstanding its use as a day care, and this right was infringed by the entry of the inspectors.  Accordingly, the Court finds a search occurred.

ORDER ~ 10

State Defendants argue, even if a search occurred, Plaintiffs consented to the search and therefore entry without a warrant was justified.  An individual may waive her Fourth Amendment right by voluntarily consenting to a search through words, gesture, or conduct. *United States v. Griffin*, 530 F.2d 739, 742 (7th Cir. 1976).   In determining whether consent was voluntary, the court considers the totality of the circumstances.  *Id.*  One factor to consider is whether there was coercion, either physical or psychological.  *Id.* "Subtle coercion, in the form of an assertion of authority or color of office by the law enforcement officers may make what appears to be a voluntary act an involuntary act." *Id.*  Based on the current record, the Court finds genuine issues of material fact exist as to whether Plaintiffs consented to the search.

For the above reasons, Defendant's Motion for Summary Judgment is **denied in part**; i.e. a search occurred because Plaintiffs had a reasonable expectation of privacy in their homes and genuine issues of material fact exist as to whether Plaintiffs' consented to the search.

3.  <u>Seizure</u>

The issue of seizure[7] can be analyzed into two parts: (1) whether

---

[7] A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  The individual must demonstrate a legitimate expectation of privacy in the items seized.  *Rakas v. Illinois*, 439 U.S. 128, 143-44 n.12 (1978).

Plaintiffs had a legitimate expectation of privacy in the day care records[8] and (2) whether Plaintiffs had a legitimate expectation of privacy in the non-day care records taken. State Defendants are not challenging Plaintiffs' legitimate expectation of privacy in non-day care records. Therefore, the dispute centers around whether Plaintiffs had a legitimate expectation of privacy in the day care records that they were required to keep by regulation.

In making this determination, the Court finds the analysis in *United States v. Blue Diamond Coal Co.*, 667 F.2d 510 (6th Cir. 1981), helpful. *Blue Diamond Coal Co.* involved a challenge to the confiscation of records that the mining company was required by statute to maintain. In that circumstance, the company moved to suppress the records taken by the federal mine inspection officials from the mine premises, arguing that a warrant should have been obtained. *Id.* at 515. The Sixth Circuit recognized that the coal mine operator "has at least some interest in

---

[8] The providers were required to maintain the following records: the name, address, and telephone numbers of the children in their care, WAC 388-155-470 (2001); medical and health data related to each child, WAC 388-155-470 (2001); attendance records and invoices for state paid children for at least five years, WAC 388-155-460(5) (2001); daily attendance records, WAC 388-155-460(1) (2001); fire evacuation drill records for the last twelve months, WAC 388-155-460(3) (2001); and battery powered smoke detector test records for the last twelve months, WAC 388-1550460(4) (2001).

ORDER ~ 12

having the record books on the premises" and that the records were not only of "interest or importance" to the government, but the mining company had an interest in their records as well. *Id.* at 518-20. Accordingly, the Sixth Circuit determined it was not proper for the mine inspector to *remove* the records absent specific consent or an administrative warrant and therefore a seizure occurred; however, the Sixth Circuit went on to hold that suppression was not necessary because the seizure was not unreasonable. *Id.* at 519-20. *See also Brock v. Emerson Elec. Co.*, 834 F.2d 994, 996 (11th Cir. 1987); *Golden Day Schs., Inc. v. Pirillo*, 118 F. Supp. 2d 1037, 1045 (C.D. Cal. 2000).

As discussed in more detail below, Washington's child care regulatory scheme allowed DSHS to "inspect" the day care records. The regulations state nothing about State Defendants being able to take the original records from the house. *C.f. Reynaud v. Superior Court*, 138 Cal. App. 3d 1, 6 (1982) (finding it was not a search or seizure for the state's fraud unit to obtain records from a third-party). In addition, unlike the regulation in *Murphy v. Washington*, 115 Wash. App. 297, 307-08 (2003), which specifically stated that the pharmacy records were subject to inspection by law enforcement, the Washington childcare regulatory regulations do not state that the records are to be open for inspection by law enforcement in order to investigate criminal activity. Furthermore, providing DSHS or DFI with the authority to take original records is inconsistent with the requirement that a day care provider maintain such records onsite. WAC 388-296-0520(8). Therefore, even though these records are subject to inspection, the Court finds the providers had a legitimate expectation of privacy in having the records

ORDER ~ 13

stay on the premises. *See Soldal v. Cook County*, 506 U.S. 56, 69 (1992) ("What matters is the intrusion on the people's security from governmental interference. Therefore, the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, . . ., or on a whim, for no reason at all.")

State Defendants also argue the taking of the original child care records was lawful because the investigators had administrative subpoena duces teca. However, these subpoena duces teca merely required the providers to "appear before a duly authorized representative of [DSHS DFI] on May [7, 8], 2002, and then and there produce all books of account pertaining to" the child care records." (Ct. Rec. 129-1 Ex. B.) The language of the subpoena did not provide the investigators with the authority to take these records off of the premises. Furthermore, the purpose and scope of an administrative subpoena differs from a judicial warrant. *See In re Grand Jury Subpoenas Dated December 10, 1987, Does I Through IV v. United States*, 926 F.2d 847 (9th Cir. 1991); *Subpoena Duces Tecum v. Bailey*, 228 F.3d 341 (4th Cir. 2000); *In re Nwamu*, 421 F. Supp. 1361, 1365 (D.C.N.Y. 1976). "Because a subpoena duces tecum leads to 'the compulsory production of private papers," a person served with a subpoena duces tecum is entitled to the Fourth Amendment's protection against unreasonableness." *Bailey*, 228 F.3d at 347 (quoting *Hale v. Henkel*, 201 U.S. 43, 76 (1906). An administrative subpoena must be sufficiently limited in scope, relevant in purpose, and specific in directive in order for it to satisfy the Fourth Amendment's reasonableness requirement. *Id.* at 347. While a warrant is a judicial

authorization allowing law enforcement to search or seize persons or things without prior notice, a subpoena commences an adversary process, which includes the right to challenge it in court before complying with its demands. *Id.* at 348.

When the facts are viewed in Plaintiffs' favor, the providers were advised by the investigators that they had a court order (as "subpoena duces tecum" is translated into Spanish) to enter the house and obtain immigration and day care records. (Ct. Recs. 344-59, 449-69, & 471-75.) The provider generally was not shown the document and, even if it was shown to the provider, the subpoena was written in English and no translation of the document was provided. *Id.* Furthermore, the providers were not advised that they had the ability to challenge the subpoena. *Id.* Based on these facts, the investigators utilized the subpoena as a judicial warrant. Accordingly, there are genuine issues of material fact surrounding the serving of the subpoena duces teca and whether Plaintiffs consented to the investigators taking the original documents with them; Defendants' motion is **denied in part.**

4. <u>Pervasively-Regulated Business</u>

Regardless of whether the investigators' conduct constituted a search and/or seizure, State Defendants maintain such conduct was authorized under the pervasively-regulated business exception to the warrant requirement. An exception to the general warrant requirement exists for "pervasively regulated businesses." *New York v. Burger*, 482 U.S. 691, 699 (1987). So long as the administrative search meets a standard of reasonableness, administrative searches of a pervasively-regulated business are one of the limited number of exceptions to the

warrant requirement. *United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1176 (9th Cir. 2006). The underlying rationale for not requiring a warrant for an administrative search of a pervasively-regulated business is that a reasonable expectation of privacy does not exist if the restrictions on the business would advise the operator that his property will be subject to periodic inspections for specific purposes. *Burger*, 482 U.S. at 700 & 702; *Donovan v. Dewey*, 452 U.S. 594, 600 (1981).

The parties agree Washington's child care system is a pervasively-regulated industry, and such a finding is supported by the Ninth Circuit's decision in *Rush v. Obledo*, 756 F.2d 713, 717 (9th Cir. 1985). *See also Golden Day Schs., Inc. v. Pirillo*, 118 F. Supp. 2d 1037, 1042 (C.D. Cal. 2000). Therefore, in order to determine whether a warrantless inspection of a Washington family child care home is reasonable, the Court must apply the three-pronged test set forth by the Supreme Court in *Burger*: (1) "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made," (2) "the warrantless inspections must be 'necessary to further [the] regulatory scheme,'" and (3) "the regulatory statute must perform the two basic functions of a warrant: [a] it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and [b] it must limit the discretion of the inspecting officers." 482 U.S. at 702-03 (citing *Donovan*, 452 U.S. at 600). The Supreme Court further refined this last prong, stating:

> To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific

purposes." In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be "carefully limited in time, place, and scope."

*Id.* at 703 (citations omitted).

For purposes of these motions, Plaintiffs do not dispute the first two requirements and challenge only the third requirement - arguing that the seven-targeted Washington statutes and regulations contain inadequate time, place, and scope limitations and that the investigation was not to ensure compliance with administrative regulations but to compile evidence of criminal activity in order to prosecute Latina day care providers. The Court analyzes each of the challenged statutes and regulations in turn to determine if they serve these two basic warrant functions in order to assess whether it is constitutional to base a search and seizure on the statute or regulation without a warrant.

a. *RCW 74.15.030*

Section 74.15.030, which is entitled, "Powers and duties of secretary," provides, in pertinent part:

The secretary shall have the power and it shall be the secretary's duty:
                                    . . .
(7) To inspect agencies periodically to determine whether or not there is compliance with chapter 74.15 RCW and RCW 74.13.031 and the requirements adopted hereunder.

The Court agrees with State Defendants that the Washington legislature did not intend for this statute to define the boundaries of the investigative powers of the secretary; however, *Burger* and *Rush v. Obledo*, 756 F.2d 713 (9th Cir. 1985), require a statute providing investigatory power to set appropriate limits. The statute only provides a scope limit, i.e. the inspection is to only determine whether there is compliance with 74.15 RCW and the requirements adopted thereunder; the

ORDER ~ 17

statute is not "carefully limited in time [and] place . . . ." *Burger*, 482 U.S. at 703.  Therefore, the Court finds, consistent with *Rush* that this statute is unconstitutional, absent a limiting statute or regulation.  As set forth below, the Court finds there currently is no statute or regulation that sufficiently restricts RCW 74.15.030 and, therefore, subsection (7) of this statute is unconstitutional.  *C.f.* *Burger*, 482 U.S. at 711-12.  Accordingly, Plaintiffs' motion is **granted in part** and State Defendants' motion is **denied in part.**

        b.  *RCW 74.15.050(2) & 74.15.060(1)*

These statutes provide in pertinent part:

> The chief of the Washington state patrol, through the director of fire protection, shall have the power and it shall be his or her duty:
> . . .
> (2) To make or cause to be made such inspections and investigations of agencies, other than foster-family homes or child-placing agencies, as he or she deems necessary.

RCW 74.15.050(2), and:

> The secretary of health shall have the power and it shall be his or her duty:
> (1)  To make or cause to be made such inspections and investigations of agencies, as may be deemed necessary.

RCW 74.15.060(1).

The Court agrees with State Defendants that Plaintiffs do not have standing to bring a facial challenge to these statutes.  There is no evidence before the Court that Defendants used these statutes to conduct investigations of day cares or that there is any likelihood that they will do so.  *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988).  Therefore, Plaintiffs' motion is **denied in part**, and Defendants' motion is **granted in part.**

ORDER ~ 18

          c.   *RCW 74.15.080*

     Plaintiffs also argue RCW 74.15.080 is overbroad:

     All agencies subject to chapter 74.15 RCW and RCW 74.13.031
     shall accord the department of social and health services, the
     secretary of health, the chief of the Washington state patrol,
     and the director of fire protection, or their designees, the
     right of entrance and the privilege of access to and inspection
     of records for the purpose of determining whether or not there
     is compliance with the provisions of chapter 74.15 RCW and RCW
     74.13.031 and the requirements adopted thereunder.

Similar to RCW 74.15.030(7), the Court finds this statute sets an

appropriate "scope" limit; however, it fails to set either a time or

place limit.  State Defendants contend the term "agencies" imposes a time

limit; the Court disagrees.  Neither the definition of "agency"[9] nor

other child care statutes or regulations support State Defendants'

argument that a provider's home is a "family child care home" *only* when

there are children other than the providers on the premises.

Accordingly, the statutes and regulations fail to place a temporal

restriction on DSHS inspections; as is confirmed by DEL Division of Child

Care and Early Learning Director Rachel Langen's deposition testimony

(Ct. Rec. 118-3 Ex. D p. 9 of dep.).  Therefore, because RCW 74.15.080

---

     [9] "Agency" is defined as:

     . . . any person, firm, partnership, association, corporation,
     or facility which receives children, expectant mothers, or
     persons with developmental disabilities for control, care, or
     maintenance outside their own homes, or which places, arranges
     the placement of, or assists in the placement of children,
     expectant mothers, or persons with developmental disabilities
     for foster care or placement of children for adoption, and
     shall include the following irrespective of whether there is
     compensation to the agency or to the children, expectant
     mothers or persons with developmental disabilities for services
     rendered . . . .

RCW 74.15.020(a).

ORDER ~ 19

fails to set either time or place limits, the Court finds this statute fails to meet the third element to the pervasively-regulated business exception to the warrant requirement. Accordingly, the Court holds that it unconstitutionally provides an unrestricted right of entrance.

        d.    *WAC 388-296-0450(2)*

Washington Administration Code 388-296-0450 provides, in pertinent part:

> When will my license be denied, suspended or revoked?
> . . .
> (2) Refuse to allow our authorized staff and inspectors requested information or access to your licensed space and premises, child and program files, or staff and children in care; . . . .

The Court finds Plaintiffs have standing to bring a facial challenge to this regulation given that there is a likelihood that this regulation would be used by the State Defendants in the event that access to the requested information or premises was refused. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988). However, the Court finds the regulation constitutional. This regulation does not set forth inspection authority; but rather sets forth reasons why a license will be denied, suspended, or revoked. Accordingly, the Court **denies in part** Plaintiffs' motion and **grants in part** Defendants' motion.

        e.    *WAC 388-296-0520(8)*

Regulatory section 388-296-0520 states, in pertinent part:

> How long must I keep child records and what am I required to document while operating my business?
> . . .
> (8) You must maintain all records and reports required by these regulations in an up-to-date manner at the facility. *The records and reports are subject to inspection and you must allow us access*

ORDER ~ 20

*to them at the time we request them.*

(Emphasis added.)    Again, the Court finds this regulation fails to "carefully limit[ ] in time [and] place . . ." the seizure. *See Burger*, 482 U.S. at 703. Subsection (8) sufficiently identifies what records and reports are subject to inspection. In addition, the regulation discusses that such records must be kept at the facility. However, the regulation does not discuss what area of the premises are subject to inspection, only that the records and reports are subject to inspection. Furthermore, the regulation sets absolutely no time restriction, such as during "business hours." Given the wording of the regulation and as confirmed by Director Langen, the DSHS inspectors could show up at the providers' residence/facility at 9 p.m. at night and request to see the required records and reports. The Court concludes the third-*Burger* prong is not satisfied; Plaintiffs' motion is **granted in part**, and Defendants' motion is **denied in part**.

   f.    *Conclusion*

  Similar to the Ninth Circuit in *Rush*, 756 F.2d at 721, the Court finds, even though a warrantless inspection of a family child care home may not necessarily violate the Fourth Amendment, RCW 74.15.030(7) and 74.15.080 and WAC 170-296-0450(2) and 170-296-0520(8) are overbroad because they do not carefully limit the time or place of the search. Therefore, these statutes and regulations provide State Defendants with unconstitionally overbroad search and seizure authority, which is not permitted by the pervasively-regulated business exception. Given the

existence of a severance clause,[10] this conclusion does not affect other portions of the Washington's child care regulatory scheme.

    5.  <u>Special Needs</u>

    In their Reply to their Motion for Partial Summary Judgment Re: Injunctive Relief, State Defendants included a "special needs" warrant exception argument.  Because this argument goes to the lawfulness of the searches and seizures, the Court addresses it here.  The special needs exception to the warrant requirement applies when "specific needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Sanchez v. San Diego*, 464 F.3d 916, 925 (9th Cir. 2006) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)).  To determine whether a special need exists, there is a two-pronged analysis: (1) whether the government has articulated a valid special need and (2) whether the proposed administrative search is justified in light of that articulated special need." *Id.*

    While recognizing the importance of unannounced inspections of day cares, the Court finds there is no special need making the warrant requirement impracticable.  Defendants did not assert or provide any evidence that the instant searches and seizures were conducted in order to ensure that the children were receiving appropriate/safe care; rather the purpose of the investigations was to discover whether overbilling was

--------

    [10] "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected," RCW 43.215.906.

ORDER ~ 22

occurring which is not a special needs exception to the warrant requirement.

### 6.  <u>Reasonableness</u>

Because the Court finds a search and seizure occurred and no exception to the warrant requirement applies, a warrant was required in order to comply with the Fourth Amendment, absent a finding that the search and seizure were otherwise reasonable. Although the factors utilized in *Wyman, Commissioner of New York Department of Social Services v. James*, 400 U.S. 309, 318-23 (1971), are useful to this Court when conducting the reasonableness analysis, the Court concludes *Wyman* does not control; the facts of this case are clearly different than those that were before the Supreme Court in *Wyman*. A few of *Wyman*'s reasonableness considerations do apply, such as (1) the public's interest in ensuring that a child's needs are met, (2) the agency and the public have an interest in ensuring that the funds are being used appropriately, and (3) a home visit is an integral part of the child care system to ensure that the prior two interests are being met. However, here, Plaintiffs presented sufficient evidence to establish the existence of genuine issues of material fact as to whether the purpose of the visits was to "snoop" and whether the visits dealt with investigating suspected crimes. In fact, Mr. Bumford, the DFI director, stated the purpose of the visits was to determine whether these providers were billing for children not present - a fraud. (Ct. Rec. 338 Ex. 1 at 79.) In addition, DFI Deputy Directory Robin Clawson testified she believed the investigators would take the original records with them (Ct. Rec. 338: Ex. 7 at 53); and DFI Investigator Mr. Hoezee told providers that he had a court order to take

the originals (Ct. Rec. 338 Ex. 9 at 61).  Similarly, one of the INS agents who served as an interpreter disclosed that he likely used the phrases "court order" or "state order" to describe the subpoena duces tecum.  (Ct. Rec. 338 Ex. 12 at 38.)  These facts, along with DFI investigator Mr. Vargas' disclosure that he did not translate the entire subpoena to the providers (Ct. Rec. 338 Ex. 10 at 113) are sufficient to create a genuine issue of material fact as to the reasonableness of these visits.  Additionally, Plaintiffs also submitted declarations from the providers indicating that the providers understood that the investigators had court permission to seize both immigration/citizenship records and child care records. (*See e.g.* Ct. Rec. 201: Decl. Bertha Mendoza.)  The evidence submitted by Plaintiffs also creates genuine issues of material fact as to whether the searches and seizures were reasonable; State Defendants' motion is **denied in part.**

    7.  Summary

    As explained above, the Court finds Plaintiffs had a legitimate expectation of privacy in their home and in the business records they were required to keep.  Accordingly, the Court finds under the facts presented by Plaintiffs that a search and seizure occurred and that genuine issues of material fact exist as to whether Plaintiffs consented to such searches and seizures.  Furthermore, if the trier of fact finds the search and seizures unreasonable, the Court concludes a warrant was required because neither the special needs exception nor the pervasively-regulated business exception to the warrant requirement applies.  The pervasively-regulated business exception does not apply because Washington's child care regulatory scheme fails to set forth sufficient

time and place restrictions.  Yet, the Court finds Plaintiffs lacked standing to challenge the constitutionality of RCW 74.15.050(2) and 74.15.060(1), and further finds that WAC 388-296-0450 is constitutional. Plaintiffs' request to enjoin the State of Washington from conducting warrantless inspections of child care homes is held in abeyance until February 16, 2007.  For these reasons, Plaintiffs' Motion for Partial Summary Judgment Declaring RCW 74.15.030, 74.15.050(2), 74.15.060(1), 74.15.080 and WAC 388-296-0450, 388-296-0520 Unconstitutional is granted in part, denied in part, and held in abeyance in part; the State Defendants' Cross Motion for Partial Summary Judgment is  granted in part and denied in part.

**B.    State Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Requests for Permanent Injunctive Relief (Ct. Rec. 254)**

State Defendants ask the Court to dismiss the below-listed *Fernandez* Plaintiffs' requests for injunctive relief on the grounds that Plaintiffs failed to comply with Federal Rule of Civil Procedure 65(d) and to establish entitlement to such injunctive relief.

1.    <u>Federal Rule of Civil Procedure 65(d)</u>

In *Fernandez* Plaintiffs' Third Amended Complaint Prayer for Relief No. 6, they request injunctive relief requiring State Defendants to comply with "Article 1, § 7 of the Washington State Constitution the [sic] Fourth and Fourteenth Amendments to the United States Constitution."  The Court concludes Federal Rule of Civil Procedure 65(d) does not require Plaintiff to plead this claim for relief with more specificity given that Rule 65(d) applies to the form and scope of the *order*.  *See also* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d

§ 2955 at 328-329 (2d ed. 1995).   Therefore, the Court **denies** State Defendants' motion to dismiss Plaintiffs' Prayer for Relief No. 6.

2.   Request No. 12: prohibiting Defendants "from investigating immigration matters family [sic] child care providers and their family members"

Defendants ask the Court to dismiss this request for injunctive relief on the grounds that the term "immigration matters" is vague and overly broad and because information about a person's immigration status may be of assistance in learning the identity of that person and their criminal history.   The Court denies State Defendants' motion finding that at this stage the State Defendants failed to adequately explain why they need to know the immigration status of an applicant, or the applicant's staff and family, in order to determine whether to grant a child day care license.   Defendants have not cited to any regulation requiring disclosure of immigration status in order to be approved for licensure, other than if the provider is to receive subsidized payments.   DSHS does need to determine the individual's criminal history; however, State Defendants did not adequately explain why access to immigration status is necessary to determine one's criminal history.   Therefore, The Court **denies** Defendants' motion to dismiss injunction request no. 12.

3.   Requests **No. 10:** prohibiting non-DSHS law enforcement persons from accompanying DSHS staff on criminal investigations of family child care involving searches and seizures without a warrant; **No. 9 (in part):** requiring the State Defendants to advise licensed family child care providers of their right to counsel; **and No. 11:** requiring the State Defendants to translate "crucial legal documents" into the primary language of LEP family child care providers

State Defendants ask the Court to dismiss the above requests for injunctive relief.   In their response, *Fernandez* Plaintiffs ask the Court to dismiss these requests under Federal Rule of Civil Procedure 41(a).

ORDER ~ 26

This request was later followed up by a specific Motion for Voluntary Dismissal of Three Injunctive Relief Claims **(Ct. Rec. 403).**

Although the Court finds it would create a clearer record if Plaintiff was given leave to voluntarily dismiss these three claims for injunctive relief, the case law makes clear that Federal Rule of Civil Procedure 41(a) is to be used only when the entire "action," i.e. lawsuit, is to be dismissed or when all claims against a particular Defendant are being dismissed. Here, Plaintiffs are not seeking to dismiss the entire action or all of the claims against a particular Defendant, but rather just seek to dismiss a handful of claims; therefore, Rule 41(a) is inapplicable. Accordingly, the Court construes Plaintiff's motion as a Motion to Amend the Complaint pursuant to Federal Rule of Civil Procedure 15. *See Gronholz v. Sears, Roebuck and Co.,* 836 F.2d 515, 518 (Fed. Cir. 1987); *SL Waber, Inc. v. Am. Power Conversion Corp.*, 135 F. Supp. 2d 521 (D.N.J. 1999). So construed, the Court grants Plaintiffs' motion and gives Plaintiffs' two weeks from entry of this Order in which to file the Amended Complaint which removes these three injunctive relief claims. The Court dispenses with the need of Defendants to file an answer to this amended complaint. Because Plaintiff will file an Amended Complaint removing these three injunctive relief requests, State Defendant's motion is **denied as moot in part.**

    4.   <u>Request No. 9 (in part): requiring the State Defendants to advise licensed family child care providers of their opportunity to quash or limit a subpoena duces tecum</u>

The Court **denies** Defendant's motion to dismiss this request at this stage.

5.    Request No. 8: prohibiting the State Defendant from demanding immediate production and removal of original documents from licensed family home child care providers without a warrant

State Defendants submit that RCW 74.15.080 and WAC 388-296-0520 both require a family home provider to allow DSHS to inspect and permit access to business records and reports required by statute/regulation.  Under the terms of these provisions, DSHS clearly had the authority to demand inspection of the documents without a warrant so long as the administrative inspection was reasonable.  *See Dow Chemical v. US By & Through Burford*, 749 F.2d 307, 311 (6th Cir. 1984).  However, these provisions did not give DSHS the authority to require *removal and retention* of the original documents.  The Court disagrees with Defendant's interpretation of "access" in RCW 74.15.080 because this statute indicates that "access" is allowed to determine whether there is compliance with the child care regulations.  The child care regulations require the day care provider to have the required records *at* the facility.  *See* WAC 288-296-0520.  Therefore, allowing DSHS to take the original records off the premises would be inconsistent with this regulation and would in fact place the provider in a "catch 22" of violating the requirement of "access" to inspection *or* the record-keeping requirements.  Accordingly, at this stage the Court **denies** Defendant's motion to dismiss Request No. 8.

6.    Request No. 7: prohibiting the State Defendants from demanding immediate entry into licensed family home child care providers business without a warrant

As explained above, the Court finds Washington's current child care regulatory scheme fails to sufficiently place a time limit on when State

ORDER ~ 28

Defendants can demand entry into a day care; accordingly, the Court **denies** State Defendants' motion to dismiss Request No. 7.

7.  <u>Summary</u>

State Defendants' Motion for Partial Summary Judgment Dismissing Plaintiffs' Requests for Permanent Injunctive Relief (Ct. Rec. 254) is **denied in part and denied as moot in part**; the Court construes *Fernandez* Plaintiffs' Motion for Voluntary Dismissal of Three Injunctive Relief Claims (Ct. Rec. 403) as a Motion to Amend Complaint and **grants** such construed motion.

**E.    State Defendants' Second Motion for Summary Judgment (Ct. Rec. 249)**

State Defendants ask the Court to rule on a number of issues through this motion.  Plaintiffs in large measure oppose the motion.  The Court addresses each of the issues below.

1.    <u>42 U.S.C. § 1983 and Qualified Immunity</u>

State Defendants contend they are entitled to summary judgment as to Plaintiffs' 42 U.S.C. § 1983 cause of action because they did not violate the constitutional rights of Plaintiffs and because they are entitled to qualified immunity.  Section 1983 is a remedial statute which provides an avenue of redress to persons injured by the actions of government which violate federal constitutional rights.  The statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ORDER ~ 29

42 U.S.C. § 1983.  In order to successfully bring such a cause of action, a plaintiff must demonstrate: (1) a person deprived the plaintiff of a federal constitutional or statutory right and (2) that person acted under color of state law.  *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  As discussed above, the Court finds a genuine issue of material fact exists as to whether Plaintiffs were deprived of their Fourth Amendment rights, and it appears undisputed that Defendants were acting under color of law.  Therefore, Plaintiffs § 1983 cause of action survives summary judgment unless State Defendants can show they are entitled to qualified immunity.

A defendant can assert the defense of qualified immunity to be shielded from personal liability under § 1983.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Diruzza v. County of Tehama*, 206 F.3d 1304 (9th Cir. 2000); *Thompson v. Souza*, 111 F.3d 694, 698 (9th Cir. 1997); *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994).  The Ninth Circuit stated in *Ceballos v. Garcetti*, 361 F.3d 1168, 1172 (9th Cir. 2004):

> When considering a defendant's motion for summary judgment on the ground of qualified immunity, we must first determine whether, when the facts are taken in the light most favorable to the plaintiff and the inferences are drawn in his favor as well, these facts and inferences establish that the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194 (2001).  If so, we must next consider whether the right was clearly established at the time of the alleged improper act.  If the right was clearly established, we ask finally whether despite this fact, the official's unconstitutional conduct constituted a reasonable mistake of fact or law.  Then, unless the constitutional error is excused on that ground, summary judgment must be denied.

*Id.* (citations omitted).

ORDER ~ 30

A law is clearly established if "a reasonable official would understand that what he is doing violates that right," *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998); in other words, government officials are insulated from liability unless they are "plainly incompetent" or "knowingly violate the law." *Knox v. S.W. Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997). This law must be clearly established at the time of defendant's acts. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994). The Supreme Court indicated a certain degree of predictability is required, yet "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 493 U.S. 635, 640 (1987) (citations omitted). "[W]hen the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly establish." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th Cir. 1994) (quoting *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). In addition to looking at case law to determine whether the law governing conduct is clearly established, statutory and administrative procedures also serve as law. *Babcock v. Wash.*, 116 Wash. 2d 596, 618-19 (1991).

The alleged conduct includes entering residences in order to conduct a fraud investigation by obtaining immigration and day care records. State Defendants submit they were allowed to engage in such conduct under

a reasonable interpretation of RCW 74.15.080.  However, the Court finds a reasonable official should have known that the authority granted by this statute was overbroad due to the principles highlighted in *Rush v. Obledo*, 756 F.2d 713, 717 (9th Cir. 1985), and that converting an administrative subpoena into an all-purpose tool to conduct a criminal investigation violated clearly established Fourth Amendment jurisprudence.  *See DeBoer v. Pennington*, 206 F.3d 857 (9th Cir. 2000); *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1361 (9th Cir. 1994); *see also Golden Day Schs., Inc. v. Pirillo*, 118 F. Supp. 2d 1037, 1046-47 (C.D. Cal. 2000).  Consistent with this conclusion, the Court **denies** James Ditzel, Israel Vargas, Robin Clawson, John Bumford, and Michael Coyne's qualified immunity requests at this stage.

However, the Court grants qualified immunity to DFI investigators' Kris Boness, Dick Hoezee, and Don Smith.  During a May 2002 briefing held with INS agents and DFI agents, Kris Boness asked Mr. Ditzel whether a warrant was needed; Mr. Ditzel stated no.  (Boness Decl. ¶ 3.)  Mr. Hoezee and Mr. Smith were present during this briefing.  Given this inquiry, the Court finds these three investigators, as subordinates, are entitled to qualified immunity.  *See Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027-28 (9th Cir. 2002); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1282, 1293 n.16 (9th Cir. 1999).  The Court also finds, on the current record, that Kennith Harden is entitled to qualified immunity.  Accordingly, State Defendants' motion is **granted in part**.

1          2.   <u>Compensatory and/or Punitive Damages</u>

2          State Defendants ask the Court to dismiss Plaintiffs' compensatory

3   and punitive damages claims against DSHS, Robin Arnold-Williams, Kennith

4   Harden, John Bumford, and Michael Coyne in their official capacities on

5   the grounds that these Defendants are immune from suit for money damages

6   under the Eleventh Amendment. Recognizing that only *Fernandez* Plaintiffs,

7   not the *De La O* Plaintiffs, are seeking such damages, the Court **grants**

8   State Defendants' motion because neither a State or its officials acting

9   in their official capacities are "persons" under § 1983.  Accordingly,

10  when defendants are acting in their official capacity they not liable for

11  money damages. *C.N. v. Wolf*, 410 F. Supp. 2d 894, 904 (C.D. Cal. 2005).

12         3.   <u>Tort Claims</u>

13         State Defendants ask the Court to dismiss Plaintiffs' tort claims

14  based upon the Washington Constitution.  Plaintiffs clarify they do not

15  bring state constitutional claims. Accordingly, the Court **denies as moot**

16  State Defendants' motion in part.

17         4.   <u>Discrimination Claims</u>

18         After reviewing the submitted material, the Court denies Defendants'

19  request to dismiss *Fernandez* Plaintiffs' Washington Law Against

20  Discrimination cause of action, finding Plaintiffs presented sufficient

21  evidence creating genuine issues of material fact as to whether State

22  Defendants discriminated against Plaintiffs as a result of their race or

23  national origin and whether Plaintiffs' protected status was a

24  substantial factor causing the discrimination.  Therefore, State

25  Defendants' motion is **denied in part**.

26  ///

ORDER ~ 33

1    5.   Issues to be Heard in December

2         State Defendants also ask the Court to dismiss Plaintiffs' 42 U.S.C.

3    § 1985 conspiracy claim and Plaintiffs' request for puntive damages

4    against the individually-named Defendants. The Court will hear these

5    issues on December 20, 2006, at 1:30 p.m. in Richland.

6         For the reasons given above, **IT IS HEREBY ORDERED:**

7         1.   Plaintiffs' Motion for Partial Summary Judgment Declaring RCW

8    74.15.030, 74.15.050(2), 74.15.060(1), 74.15.080 and WAC §§ 388-296-0450,

9    388-296-0520 Unconstitutional **(Ct. Rec. 116)** is **GRANTED IN PART** (RCW

10   74.15.030 and 74.15.080 and WAC 388-296-0520 are unconstitutionally

11   overbroad)**, DENIED IN PART** (Plaintiffs lack standing to challenge RCW §§

12   74.15.050(2) and 74.15.060(1); WAC §§ 388-296-0450 is constitutional),

13   **and HELD IN ABEYANCE IN PART until February 16, 2007** (injunction

14   request).

15        2.   State Defendants' Cross Motion for Partial Summary Judgment

16   **(Ct. Rec. 126)** is **GRANTED IN PART and DENIED IN PART.**

17        4.   Plaintiffs' Motion for Preliminary Injunction of RCW

18   74.15.030(7), 74.15.050(2), 74.15.060(1), 74.15.080 and WAC 388-296-

19   0250(1), 388-295-0450(2), 388-296-0520(8) **(Ct. Rec. 198)** is **HELD IN**

20   **ABEYANCE until February 16, 2007.**

21        5.   State Defendants' Motion for Partial Summary Judgment

22   Dismissing Plaintiffs' Requests for Permanent Injunctive Relief **(Ct. Rec.**

23   **254)** is **DENIED IN PART** (Nos. 6, 7, 8, 9 in part, and 12) **and DENIED AS**

24   **MOOT IN PART** (Nos. 9 in part, 10, and 11).

25        6.   *Fernandez* Plaintiffs' Motion for Voluntary Dismissal of Three

26   Injunctive Relief Claims **(Ct. Rec. 403)** is **CONSTRUED** as a Motion to Amend

ORDER ~ 34

Complaint and **GRANTED.** Plaintiffs have **two weeks** from entry of this Order to file an Amended Complaint which removes these three injunctive relief claims; no other aspect of the Complaint shall be altered. Defendants need not file an answer to this Amended Complaint.

7.   State Defendants' Second Motion for Summary Judgment **(Ct. Rec. 249)** is **GRANTED IN PART** (subordinates and Mr. Harden granted qualified immunity; compensatory and punitive damages claims against individuals acting in official capacity), **RESET IN PART to December 20, 2006, at 1:30 p.m.** (conspiracy and punitive damages), and **otherwise DENIED IN PART.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order and provide copies of this Order to counsel.

**DATED** this ___20th___ day of December 2006.


                    ___S/ Edward F. Shea_____
                         EDWARD F. SHEA
                    United States District Judge

Q:\Civil\2004\0192.nov.2006.msjs.wpd

ORDER ~ 35